DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before us as a reopening of appellant's appeal pursuant to App. R. 26(B). Since the ineffectiveness of appellant's appellate counsel resulted in the dismissal of his appeal, the issues on appeal are the assignments of error appellant would have raised had his appeal not been dismissed. Appellant appeals from the March 21, 2002 judgment of the Erie County Court of Common Pleas, which sentenced him following his conviction of one count of complicity to commit trafficking in crack cocaine, one count of possession of crack cocaine, and one count of trafficking in crack cocaine. Upon consideration of the assignments of error, we affirm the decision of the lower court. Appellant asserts the following assignments of error on appeal:
 {¶ 2} "Assignment of Error #1: The trial court erred by overruling appellant's Ohio Criminal Rule 29 motion to dismiss count one of the indictment, that he aided or abetted the sale of crack on December 19, 2000, because the state failed to produce sufficient admissible evidence to convict the appellant beyond a reasonable doubt.
 {¶ 3} "Assignment of Error #2: The appellant's conviction on count one of the indictment, that he aided or abetted the sale of crack on December 19, 2000, was against the manifest weight of the evidence.
 {¶ 4} "Assignment of Error #3: The court committed plain error by admitting into evidence certain oral and audio tape statements that were highly prejudicial and violated appellant's constitutional right to confront and cross examine witnesses against him.
 {¶ 5} "Assignment of Error #4: The court committed plain error by permitting a lay witness to testify as to his opinions in court which were highly prejudicial and resulted in the appellant being denied a fair trial.
 {¶ 6} "Assignment of Error #5: the trial court erred by overruling appellant's Ohio Crim. R. 29 motion to dismiss count three of the indictment, that he possessed 24.5 grams of crack on or about December 21, 2000, because the state failed to produce sufficient admissible evidence to convict the appellant beyond a reasonable doubt.
 {¶ 7} "Assignment of Error #6: The appellant's conviction on count three of the indictment, that he possessed crack on or about December 21, 2000, was against the manifest weight of the evidence.
 {¶ 8} "Assignment of Error #7: The trial court erred by overruling appellant's Ohio Crim. R. 29 motion to dismiss count four of the indictment, that he sold crack on January 17, 2001, because the state failed to produce sufficient admissible evidence to convict the appellant beyond a reasonable doubt.
 {¶ 9} "Assignment of Error #8: The appellant's conviction on count four of the indictment, that he sold crack on January 17, 2001, was against the manifest weight of the evidence.
 {¶ 10} "Assignment of Error #9: The court committed plain error by permitting a second lay witness to give prejudicial and inadmissible opinion evidence.
 {¶ 11} "Assignment of Error #10: The appellant was denied effective assistance of counsel.
 {¶ 12} "Assignment of Error #11: The appellant was wrongfully and illegally
 {¶ 13} convicted of count three of the indictment, because both the indictment and jury instructions omitted an essential element of the crime charged, the culpable mental state, knowingly."
 {¶ 14} Appellant was indicted on two counts of complicity to commit trafficking in crack cocaine, a violation of R.C. 2925.03(A)(2) and (C)(4)(b) and R.C. 2923.03(A), both fourth degree felonies; one count of possession of crack cocaine, a violation of R.C. 2925.11(A) and (C)(4)(d), a second degree felony; and one count of trafficking in crack cocaine, a violation of R.C. 2925.03(A) and (C)(4)(a), a fifth degree felony. The first two counts relate to controlled drug buys that occurred on December 19 and 20, 2000. The third count stems from a search of appellant's apartment on December 21, 2000. The fourth count relates to a controlled drug buy that occurred on January 17, 2001.
 {¶ 15} The jury found appellant guilty of Counts 1, 3, and 4, but not Count 2 relating to the controlled drug buy on December 20, 2000. Appellant was sentenced to 12 months imprisonment on Count 1, 5 years on Count 3, and 11 months on Count 4. The sentences for Counts 1 and 3 are to be served concurrent with each other, but consecutively with Count 4 and the sentenced imposed in another case. Appellant was also fined.
 {¶ 16} The following evidence was submitted at trial.
 {¶ 17} Vince Donald, Keith Lobsinger, and Carl Johnson, officers assigned to the Erie County Drug Task Force, and Gary Skelton, the confidential informant, testified about the controlled drug buys made on December 19 and 20, 2000. The tape recording of each buy was also played for the jury.
 {¶ 18} The task force utilized the informant after he told them that he could buy some drugs from appellant. The informant had worked with the task force for the prior four years in other cases. He had been paid $50-$100 per buy in the past and did not have any criminal convictions. The informant had known Kathy Agee and Thomas Pace, a/k/a Spanky, for about two and one-half years. He had been to their apartment four times to purchase drugs. Pace had also delivered drugs to the informant and had used drugs with Pace. The informant had met appellant twice. He met appellant shortly before the December 19 buy because appellant wanted the informant to repair scratches on appellant's car. Another time, the informant was visiting Agee's apartment and appellant was there watching television.
 {¶ 19} On December 19, 2000, the informant made a controlled buy from Pace at the upper apartment at 1106 West Adams Street, Sandusky, on behalf of Officer Johnson, who was working under cover. The task force met the informant at a predetermined location and searched his vehicle and person. The informant was also wired with a transmitter. The money to be used for the drug buy was photocopied. Officer Johnson drove informant to the apartment. Officers Donald and Lobsinger conducted surveillance and listened to the drug transaction.
 {¶ 20} As they arrived, the informant believed that appellant, Pace, and Agee were at home because all of their cars were there. The informant knew that appellant had two cars that he drove and that Steve Castile also drove one of these cars. The informant entered the apartment and spoke to Agee and then to Pace. He told Pace that he wanted to buy some drugs. The informant then returned to his car and talked to Officer Johnson to get the money. The informant returned to the second floor apartment and talked to Pace. Pace left the apartment and returned a short time later. After he returned, Agee said "Spank . . . Spanky . . . ah, . . . Mark calling you." After the informant received the cocaine, he left the apartment.
 {¶ 21} The task force met again after the buy and searched the informant and the car. The officers secured the drugs that had been purchased. The informant was debriefed to ensure that what the officers heard corresponded with what had happened. Lab testing revealed that the informant had purchased a sixteenth of a gram of cocaine that evening.
 {¶ 22} The officers and informant also testified that after the first drug buy, the undercover officer and the informant went back to his apartment to prepare to go back for a second controlled buy. However, Pace came to appellant's apartment and pulled out a pipe, indicating that he wanted to smoke some cocaine with them. The informant made some excuses to get rid of Pace and they left him in the apartment.
 {¶ 23} On December 20, 2000, the task force arranged to have the informant and Officer Johnson buy crack cocaine from Steve Castile at 1904 Pearl Street in Sandusky using the same procedure. The informant and Officer Johnson went to Castile's home. The informant asked Castile to hook him up with someone. The informant knew of Steve Castile, but the informant had never bought drugs from him before. When the informant returned to the car, he told Officer Johnson that Castile was going with them to get the drugs. The three left in Johnson's car and went to 1106 West Adams Street in Sandusky where the informant gave Castile $40 as he left the vehicle and entered the residence alone. The informant believed that appellant was home because his lights were on and he saw appellant's car. The task force was unable to hear what went on inside the residence because Castile was not wired. Castile returned to the car and gave the informant what was later determined by a laboratory to be two pieces of crack cocaine, about one tenth of a gram.
 {¶ 24} After these two buys, a search warrant was obtained for the lower apartment at 1106 West Adams Street where appellant lived. Several officers involved in the execution of the search warrant testified.
 {¶ 25} As the entry team of officers approached the premises, they saw Agee and Pace, who were leaving the residence. When Agee recognized them, she ran back into the house. Pace went to his car. The officers forced the front door open and secured the premises. David Castile Jr. was found in the kitchen near an open drawer. Meanwhile, another officer who was securing the rear of the house observed appellant exit the house and turn toward a wooden staircase. The house has only one back door, which is from appellant's apartment. After appellant saw the officer, appellant started walking toward the driveway very quickly. The officer called for appellant to stop, but he did not and ran around the house. He yelled to the other officers that appellant was coming. The officer who was going to be the first to enter the apartment, saw appellant quickly moving toward the front door of the apartment. The officer ordered appellant to the ground. Appellant was breathing heavily and not wearing a coat. The officer took $445 and a set of car keys from appellant. Appellant was then taken back into the house.
 {¶ 26} The officers conducted a search of the residence. In the drawer that was open near David Castile, the officers found a piece of cardboard with names and amounts next to them. An officer testified that he had seen such notations in previous drug-related searches. The officer knew that some drug traffickers front out the drugs by giving people they trusted some drugs and collecting payment later. The officer recognized some of the nicknames, including those of Pace, David Castile, and Steve Castile. Appellant's name was not on the list. All of the numbers were even numbers. The officers recognized the notations of "14G" and "7G," as represented the weights of the drugs fronted, about half a gram and a quarter of a gram of cocaine, respectively. Next to the list, the officers found a calculator and plastic baggies. Another officer searched the trash and found torn baggies commonly used by dealers to hold drugs.
 {¶ 27} A drug detection dog was also used to search the premises. The dog alerted to three locations, but only a few marijuana seeds and the end of a plastic baggie were found near one of the spots. The K-9 also altered to a car in the driveway and a car on the street. Agee consented to the search of her car, but no drugs were found. Appellant denied that the other car was his or that the car keys found on him would operate the car. Because one of the officers had seen appellant driving the car shortly before the day of the search, the car was towed to the Sandusky County Police Department and searched the next day. At trial, appellant stipulated that he had driven the car on occasion. The owner of the car was determined to be Lucy M. Gant and the keys found on appellant fit the ignition. No drugs were found in the car. The handler testified that residual odor could have caused the dog's false alerts. The dog did not alert outside the house; but, the officer testified that the weather conditions would have made searching outside by a K-9 very difficult.
 {¶ 28} The money taken from appellant included two of the bills used in the second controlled buy. Appellant stated that $200 was from his aunt and $200 from his mother. He also made some statement that the money was insurance proceeds from a claim. When another officer said that some of the money matched the drug buy money, appellant stated that he had gotten $50 from upstairs.
 {¶ 29} The officers searched the area where appellant was apprehended and found only a pager. Officers searched the back entrance to the house following appellant's footprints in the snow. Where the footprints stopped, next to the wooden staircase, an officer found what was later determined by a laboratory to be a 24 gram rock of crack cocaine. Appellant denied that it was his. He told the officers that they couldn't "pin that on me, it was not in the house." An officer testified that this rock of cocaine would have a value of $5,000 and that he had never heard of users buying such a large size. However, he knew the dealers would chip off pieces of a large rock and sell them. This rock of cocaine had ridges on it, which indicated to the officers that smaller chunks had been cut off. A further search of the outside of the house failed to produce any more crack cocaine.
 {¶ 30} Another controlled buy was made on January 17, 2001, with a different confidential informant, Fred Lanier, who had felony drug convictions and was serving an eight-month sentence for drug trafficking stemming from charges that arose after this search. The informant testified that he had known appellant for a while prior to the buy and had called appellant to arrange the buy. The officers watched the informant enter the house at 1106 West Adams Street to make a controlled buy. When the informant arrived, appellant was home and there also was a woman in her early 20s there. Appellant made some phone calls. After the informant had been in the house for 30-40 minutes, Stokes and a woman arrived. Then, appellant, Stokes and one of the women left. The second unidentified woman remained with the informant. Appellant and Stokes returned after 10-30 minutes, and Stokes handed the informant the crack cocaine in exchange for the money. The informant believed that Stokes was acting as a front man for appellant because he had a bad reputation for using drugs. The informant then left the premises. Laboratory tests substantiated that the informant had purchased .8 grams of crack cocaine.
 {¶ 31} In his third, fourth, and ninth assignments of error, appellant contends that the trial court committed plain error in three instances regarding the admission of evidence. In his third assignment of error, appellant alleges that the court erred by admitting into evidence the tape-recorded statements of Agee made during the December 19 controlled buy (that appellant wanted to talk to Pace). Appellant contends that this statement was highly prejudicial and violated appellant's Sixth Amendment
right to confront and cross-examine witnesses against him. In his fourth and ninth assignments of error, appellant alleges that the trial court committed plain error by permitting lay witnesses, the confidential informants, to testify as to their opinions, through the playing of the tape recordings of the controlled buys, which resulted in highly prejudicial evidence being admitted into evidence and denied appellant a fair trial.
 {¶ 32} Because appellant failed to object to these alleged errors, they support a reversal on appeal only if they rise to the level of plain error. Crim. R. 52(B) provides that plain error may be noticed if the error affects substantial rights. Therefore, reversal based on plain error occurs only in exceptional cases to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, 95, certiorari denied (1984), 465 U.S. 1106. Plain error will be recognized only if the appellate court determines that but for the error, the outcome of the trial would have been different. Crim. R. 52(B) and State v. Wogenstahl
(1996), 75 Ohio St.3d 344, 357, certiorari denied (1996),77 Ohio St.3d 1431.
 {¶ 33} Recently, in Crawford v. Washington (2004), 541 U.S. 36, the United States Supreme Court held that out-of-court testimonial statements by a witness who did not testify at trial were inadmissible against the defendant unless the witness was unavailable to testify at trial and the defendant previously had an opportunity to cross-examine the witness. Id. at 1365. Because the court failed to address non-testimonial statements, the lower courts have concluded that the Crawford holding did not alter the prior law regarding non-testimonial statements. United States v.Saget (C.A. 2, 2004), 377 F.3d 223, 230. Thus, under Ohio v. Roberts
(1980), 448 U.S. 56, 66, to determine whether the Sixth Amendment
confrontation right bars the admission of non-testimonial statements by a declarant who did not testify at trial, the court must determine whether the statement is reliable either because it either falls within one of the firmly-rooted hearsay exceptions or there has been "* * * a showing of particularized guarantees of trustworthiness." Roberts, supra. The later must be based on the circumstances surrounding the making of the statement that reveal whether the declarant was worthy of belief. Statev. Madrigal (2000), 87 Ohio St.3d 378, 387, certiorari denied (2000),531 U.S. 838, quoting Idaho v. Wright (1990), 497 U.S. 805, 819.
 {¶ 34} In the case before us, Agee's statement was clearly used to prove the truth of the matter asserted, i.e., that appellant was present and involved in the sale of the drugs. Therefore, the statement is hearsay. Furthermore, the statement does not fall within one of the exceptions of Evid. R. 803 or 804. However, we find that the statement does have indicia of reliability in that there was no improper motivation for Agee to make this statement since she made the statement immediately in response to what she heard. Therefore, we find that admission of the taped statement of Agee into evidence did not violate appellant'sSixth Amendment confrontation rights. Appellant's third assignment of error is not well-taken.
 {¶ 35} With respect to the issue of lay witnesses' opinion testimonies raised in appellant's fourth and ninth assignments of error, appellant contends that the trial court erred by admitting the tape-recorded statements of the confidential informants.
 {¶ 36} The trial court has the discretion to admit or exclude relevant evidence. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Evid. R. 701 provides that: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." A lay witness must have a reasonable basis for his opinion that comes from his experience or specialized knowledge. State v. McKee (2001), 91 Ohio St.3d 292, 296. Lay opinion evidence is necessary when the jury cannot understand what the witness observed unless he expresses his observations in the form on an opinion. Urbana ex rel. Newlin v. Downing (1989), 43 Ohio St.3d 109, 112, certiorari denied (1989), 493 U.S. 934. However, the line between fact and opinion is not necessarily a clear one. Tomlinson v. Cincinnati
(1983), 4 Ohio St.3d 66, 67-68.
 {¶ 37} The first statement at issue was made during the December 19 buy. The informant stated that appellant was present during the purchase of drugs, that there was a big chunk of crack cocaine, and that appellant had lots of hiding spaces. We find that the statements were not statements of opinion, but rather were statements of fact relating to the events as they were perceived by the informant. Appellant attacked the accuracy of appellant's perceptions on cross-examination. Whether or not the informant's statements were credible was a matter for the jury to determine. Therefore, the trial court did not err in admitting these statements into evidence.
 {¶ 38} The second statement at issue was made during the January 17 buy. At that time, the informant said that Stokes was acting as appellant's flunky by delivering the drugs to the informant. Again, we find that this statement was a statement of fact. The informant was merely stating the events of the evening he perceived with the use of street jargon. The name, "flunky," merely conveys what the informant saw happening. Even if the informant's statement was classified as an opinion, his conclusion was rationally based upon his observations at the time of the sale based upon his experience in the drug trade and it enabled the jury to understand why appellant did not personally deliver the drugs to the informant. Therefore, we find that the trial court did not abuse its discretion in admitting this statement into evidence.
 {¶ 39} Appellant's fourth and ninth assignments of error are not well-taken.
 {¶ 40} In his first, second, fifth, sixth, seventh, and eighth assignments of error, appellant contends that the trial court erred by denying his Crim. R. 29 motion to dismiss each count of the indictment on the grounds that there was insufficient evidence to convict him of each count and that the conviction on each count was contrary to the manifest weight of the evidence.
 {¶ 41} The standard for determining whether there is sufficient evidence to support a conviction is whether the evidence admitted at trial, "if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St. 3d 259, paragraph two of the syllabus, and State v. Thompkins (1997),78 Ohio St.3d 380, 386. Therefore, the verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.
 {¶ 42} However, even if there is sufficient evidence to support the verdict, the appellate court may decide that the verdict is against the weight of the evidence. Thompkins, supra at 386-390. A challenge to the weight of the evidence questions whether the greater amount of credible evidence was admitted to support the conviction than not. Id. at 387, andState v. Smith (1997), 80 Ohio St. 3d 89, 114, certiorari denied (1998),523 U.S. 1125. A reviewing court will grant a new trial only in an exceptional case where the evidence weighs heavily against conviction.Thompkins, supra.
 {¶ 43} With respect to Count 1, appellant was charged with complicity to commit trafficking in crack cocaine on December 19, 2000, a violation of R.C. 2925.03(A)(2). That section provides that: "No person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2923.03(A) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: (1) Solicit or procure another to commit the offense; (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code; (4) Cause an innocent or irresponsible person to commit the offense."
 {¶ 44} Appellant argues that there was no direct evidence that appellant aided or abetted the sale of drugs on December 19, 2000. Furthermore, he argues that the circumstantial evidence presented by the state did not prove beyond a reasonable doubt that appellant was present and involved in the sale of the cocaine. First, he argues that the evidence shows that car at the scene was driven by both himself and Steve Castile. Second, appellant contends that the fact that Pace came to the informant's house to smoke cocaine with him does not tend to prove in any way that the cocaine the informant bought belonged to appellant. Appellant also argues that conviction was based on certain inadmissible evidence, as argued in his third and fourth assignments of error. However, we have already found that all of these arguments lack merit.
 {¶ 45} Circumstantial and direct evidence have the same probative value. Jenks, supra, at paragraph one of the syllabus. Therefore, it is irrelevant whether the essential elements are the crime were established by direct or circumstantial evidence. We find that appellant's presence at the scene and involvement in the buy were established by evidence that the car he normally drove was present; that Pace left his apartment for a few minutes and then returned with cocaine to sell to the informant; that Agee stated during the buy that "Mark" wanted to talk to Pace after he had returned to the apartment; that the informant believed that Pace had gone downstairs to appellant's apartment to get the cocaine; that a drug "tally" sheet was found in appellant's apartment; and that appellant was seen near the area where a rock of cocaine was found outside of his apartment on the night of the search.
 {¶ 46} After considering all of the evidence, we find that any rational trier of fact would have found the essential elements of the crime of aiding and abetting the sale of cocaine were proven beyond a reasonable doubt. Furthermore, upon a review of all of the evidence, we find that after weighing the evidence, and all reasonable inferences, and considering the credibility of witnesses, the jury did not lose its way and that a manifest miscarriage of justice did not occur. Appellant's conviction on Count 1 is not contrary to the manifest weight of the evidence. A rational jury could reasonably find that appellant knowingly aided and abetted the sale of cocaine on December 19, 2000.
 {¶ 47} With respect to Count 3, appellant was charged with possession of crack cocaine on December 21, 2000, a violation of R.C. 2925.11(A). That section provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(C)(4)(d) provides that if the amount of crack cocaine involved is between 10 and 25 grams, the possession of cocaine is a felony of the second degree and the court must impose a mandatory prison term. R.C. 2925.01(K) defines "possession" as "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." Constructive possession may be reasonably inferred from evidence that the contraband was found in close proximity to the area where defendant had been seen under circumstances which gave rise to a motivation to hide the contraband. State v. Brooks (1996), 113 Ohio App.3d 88, 90; State v.Barr (1993), 86 Ohio App.3d 227, 235; State v. Pruitt (1984),18 Ohio App.3d 50, 58; and State v. Martin, 2d Dist. App. No. 2000 CA 77, 2002-Ohio-3301, at ¶ 16.
 {¶ 48} Appellant argues that there was insufficient evidence to establish that the 24.5 gram rock of crack cocaine found outside his apartment belonged to him. Furthermore, there was no evidence that the "tally sheet" found in appellant's apartment was his property, especially since David Castile was found next to the drawer in which the "tally sheet" was found. We disagree.
 {¶ 49} There was sufficient circumstantial evidence to establish that appellant had dominion and control over the cocaine found outside his apartment. Agee was seen returning to the apartment house after seeing the search warrant officers heading toward the home. Appellant was seen leaving the residence as the officers were breaching the front door of the house. The back door that appellant exited through is an exit from his apartment alone and was not a common exit to the home. An officer observed appellant turn toward the stairwell after exiting the house near the area where the cocaine was found. The rock of cocaine that was found had ridges on it, which indicated that smaller chunks had been cut off. Appellant left the back door area after seeing officers in the back yard. Appellant had money from one of the controlled drug buys on his person. A tally sheet commonly used in drug trafficking was found inside his apartment.
 {¶ 50} We recognize that there was also evidence that others were in the apartment at the time of the search and two of those persons had been involved in the controlled drug buys. However, the jury could reasonably infer from appellant's actions and proximity to the area where the cocaine was found that, under the circumstances of this case, appellant was hiding the cocaine outside his apartment to avoid prosecution. Therefore, we find that there was sufficient evidence to submit this count to the jury. Furthermore, upon a review of all of the evidence, we find that after weighing the evidence, and all reasonable inferences, and considering the credibility of witnesses, the jury did not lose its way and that a manifest miscarriage of justice did not occur. Appellant's conviction for possession is not contrary to the manifest weight of the evidence.
 {¶ 51} With respect to Count 4, appellant was charged with trafficking in crack cocaine on January 17, 2001, a violation of R.C. 2925.03(A)(1). That section provides that "[n]o person shall knowingly * * * [s]ell or offer to sell a controlled substance."
 {¶ 52} Appellant contends that at most the jury could have found that appellant aided and abetted the sale, but not that he sold the cocaine. The major premise of appellant's argument is that the informant's recorded statements that Stokes was acting only as a "flunky" should not have been admitted into evidence. This argument, however, has already been addressed and rejected. However, even without the informant's statements, there was sufficient evidence to establish that appellant sold the drugs that day.
 {¶ 53} The informant asked appellant to sell him cocaine. Appellant then made some telephone calls. Afterward, Stokes arrived and drove appellant somewhere. A short time later, appellant and Stokes returned. Stokes handed the informant the cocaine in exchange for the money.
 {¶ 54} Based on these facts alone, we find that any rational trier of fact would have found the essential elements of the crime of drug trafficking had been proven beyond a reasonable doubt. While appellant did not directly hand the drugs to appellant, a jury could reasonably infer that appellant arranged for the transfer of the drugs since he was the informant's initial contact and the remaining chain of events stemmed from that initial contact and appellant's control over the events.
 {¶ 55} We also find that after weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, the jury did not lose its way, a manifest miscarriage of justice did not occur, and that appellant's conviction for drug trafficking on January 17, 2001, is not contrary to the manifest weight of the evidence.
 {¶ 56} Accordingly, appellant's first, second, fifth, sixth, seventh, eighth assignments of error are not well-taken.
 {¶ 57} In his tenth assignment of error, appellant contends that his retained counsel rendered ineffective assistance of counsel because his counsel: (1) failed to file a motion to suppress attacking the search warrant; (2) failed to file a motion in limine to exclude the most damaging testimony against him, which was the tape recording of the December 19, 2000 sale; (3) failed to file a motion in limine to exclude the opinion evidence of the informant involved in the January 17th controlled buy; and (4) failed to object to the joinder of the offenses pursuant to Crim. R. 14.
 {¶ 58} The right to the assistance of counsel is guaranteed under the Article 1, Sec. 10 of the Ohio Constitution and theSixth Amendment to the United States Constitution. Appellant bears the burden of proving that his counsel was ineffective since an attorney is presumed competent. Strickland v. Washington (1984), 466 U.S. 668, 687, and Statev. Lott (1990), 51 Ohio St.3d 160, 174, certiorari denied (1990),498 U.S. 1017. To meet this burden of proof, appellant must show that: (1) there was a substantial violation of the attorney's duty to his client, and (2) the defense was prejudiced by the attorney's actions or breach of duty. Strickland, supra at 687-689 and State v. Smith (1985),17 Ohio St.3d 98, 100. Prejudice is shown where there is a reasonable probability that a different result would have occurred in the case if the attorney had not violated his duty to his client. State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus, certiorari denied (1990), 497 U.S. 1011, and State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 108, certiorari denied (2003), 539 U.S. 907.
 {¶ 59} Appellant first argues that his trial counsel was ineffective because he did not file a motion to suppress the physical evidence in this case based upon a challenge that the state lacked probable cause to obtain the search warrant. He relies upon State v. Woolum (1976),47 Ohio App.2d 313, 316, which held that the failure to file a motion to suppress which could have disposed of the case denies the defendant effective assistance of counsel and, therefore, due process. This case, however, has been rejected by that same court as well as other courts.State v. Kuntz (Feb. 26. 1992), 4th Dist. App. No. 1691, at 6-7, andState v. Martin (1983), 20 Ohio App.3d 172, 174, at fn. 1. Instead, appellant must demonstrate not only an error, but prejudice from the error. In this case appellant could not establish either. Appellant argues that because the search warrant affidavit was not in the record and there was no motion to suppress hearing, the facts regarding probable cause were not presented. Therefore, on appeal, he was unable to determine whether the search was supported by probable cause. But based on the facts that are in the record, he believed that there was no probable cause for the search.
 {¶ 60} Upon a review of the transcript, however, we find that the search warrant affidavit was submitted into evidence by the state. However, it was appellant who requested that the warrant and affidavit be withdrawn from the evidence because of the prejudicial effect it might have on the jury. This was obviously a tactical decision by appellant's trial counsel and, therefore, cannot be the basis for a claim of ineffective assistance of counsel after trial. State v. Jackson (2001),92 Ohio St.3d 436, 447. Furthermore, since the warrant and affidavit are no longer part of the record, the issue of whether or not probable cause was established is an issue that must be addressed in a postconviction relief proceeding. State v. Tackett, 11th Dist. App. No. 2003-A-0091, 2004-Ohio-6705, at ¶ 19.
 {¶ 61} Appellant's second and third alleged errors relate to the tape-recorded statements of the confidential informants. We have already and addressed and rejected the argument that these statements were inadmissible. Therefore, the admission of these statements into evidence cannot support a claim of ineffective assistance of counsel.
 {¶ 62} Lastly, appellant argues that his trial counsel rendered ineffective assistance by failing to make a request, pursuant to Crim. R. 14, for separation of the offenses due to prejudice. Appellant argues that the counts should not have been combined because there is no connection between the crimes and that they were only combined to bolster the state's case. He contends that the cumulative effect of combining the weak evidence applicable to each of count was that the jury would convict appellant of something.
 {¶ 63} We conclude that this argument also lacks merit. Crim. R. 8(A) permits the joinder of offenses where: (1) the offenses are related; (2) there is direct and uncomplicated evidence to support each charge; and (3) the jury can separate the evidence with respect to each charge. Crim. R. 14 permits the severance of offenses where their joinder will be prejudicial to the defendant. State v. Roberts (1980), 62 Ohio St.2d 170,175, certiorari denied (1980), 449 U.S. 897. The court weighs the prejudice from joinder against the justifications for joinder of the offenses for trial. On appeal, we consider whether the trial court abused its discretion in refusing to separate the offenses. State v. Brooks
(1989), 44 Ohio St.3d 185, 193.
 {¶ 64} In this case, all of the charges stem from drug trafficking activities involving appellant. The evidence is clearly divided by the dates of the controlled buys and is relatively simple in nature. The jury clearly separated the evidence because it convicted appellant of Count 1 and acquitted him of Count 2. Appellant's argument is primarily based upon his belief that there was insufficient evidence to establish each of the offenses. However, we have already addressed the sufficiency of the evidence issues and dismissed this argument. The fact that some evidence supporting one crime was discovered in connection with another crime does not prevent that evidence from being admitted against appellant for the first crime. Therefore, we find that appellant's trial counsel did not render ineffective assistance by failing to file a Crim. R. 14 motion to separate the offenses.
 {¶ 65} Appellant's tenth assignment of error is not well-taken.
 {¶ 66} In his eleventh assignment of error, appellant contends that Count 3 of the indictment was void because it failed to allege an essential element of the crime, the culpable mental state. He also contends that his failure to object to the indictment prior to trial does not waive this error. Alternatively, he argues that even if he has waived the error regarding the indictment, the trial court also left the essential element of "knowingly" out of the jury instructions. Therefore, it was plain error for the court to fail to instruct the jury about the culpable mental state.
 {¶ 67} Appellee concedes in this case that the indictment failed to allege that appellant "knowingly" possessed cocaine. It is clear that when an essential element of the crime is omitted from the indictment, the indictment does not charge an offense and it is voidable for lack of subject matter jurisdiction. State v. Cimpritz, (1953), 158 Ohio St. 490, paragraph six of the syllabus as modified by Midling v. Perrini (1968),14 Ohio St.2d 106, syllabus. However, failure to object to a defective indictment constitutes waiver of the issue on appeal. R.C. 2941.29 andState v. Dumas (Apr. 10, 1986), 8th Dist. App. No. 50216, 50217, at 12. Cf. State v. Hous, 2d Dist. App. No. 02CA116, 2004-Ohio-666, at ¶ 12.
 {¶ 68} We now turn to the issue of plain error. Unless waived under certain circumstances, a defendant charged with a felony must be prosecuted by indictment. Crim. R. 7(A). The indictment satisfies two purposes: it ensures the due process right to be notified of the nature and cause of the accusation and it protects against future prosecution for the same conduct. Article 1, Section 10, Ohio Constitution andFourteenth Amendment to the United States Constitution; State v. Siferd,151 Ohio App.3d 103, 2002-Ohio-6801 at ¶ 19; and State v. Burkitt
(1993), 89 Ohio App.3d 214, 224. In this case, the statute referenced in the indictment clearly identified the charges against appellant. Since these two purposes have been met, we cannot conclude the defective indictment prejudicially affected appellant's substantial rights.
 {¶ 69} We now turn to the issue of whether the trial court committed plain error by failing to instruct the jury that it had to find that appellant "knowingly" committed the crime. The court instructed the jury as follows:
 {¶ 70} "In Count III the Defendant is charged with possession of crack cocaine. Before you can find the Defendant guilty of possession of crack cocaine, Count III, the State must prove that on or about December 21st, 2000 and in Erie County, Ohio, the Defendant, Mark Castile, did possess, use or obtain a Schedule II controlled substance in an amount greater than 10 grams but less than 25 grams of crack cocaine, to-wit: 24.5 grams of crack cocaine. Okay.
 {¶ 71} "Possession is a voluntary act if the possessor knowingly prepared or received the crack cocaine or was aware of his control thereof for a sufficient period of time to have ended his possession. A person has possession when he knows that he has the object on or about his person or property, or places it where it is accessible to his use or direction, and he has the ability to direct or control its use."
 {¶ 72} The court had previously defined "knowingly" in connection with Counts 1 and 2. The court stated that:
 {¶ 73} "A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or he is aware that his conduct will probably be of a certain nature. A person has knowledge of circumstances when his is aware that such circumstances probably exist. Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence. * * *"
 {¶ 74} The jury later requested a copy of the court's definition of the terms complicity, aiding and abetting, and possession. At that time, the court defined possession as:
 {¶ 75} "A person has possession when he knows that he has the object on or about his person or property or places it where it is accessible to his use or direction and he has the ability to direct or control its use. Ownership is not necessary. A person may possess or control property belonging to another. Possession means having control over a thing or substance but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
 {¶ 76} Upon a review of the entire jury instructions, we find that the court clearly instructed the jury that it had to find that appellant knowingly possessed cocaine to establish guilt on Count 3 of the indictment. Appellant's eleventh assignment of error is not well-taken.
 {¶ 77} Having found that the trial court did not commit error prejudicial to appellant and that substantial justice has been done, the judgment of the Erie County Court of Common Pleas is affirmed. Pursuant to App. R. 24, appellant is hereby ordered to pay the court costs incurred on appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Handwork, J., Singer, P.J., Pietrykowski, J., concur.