OPINION
{¶ 1} Defendant-appellant, Thomas Maag, appeals the judgment of conviction and sentence of the Court of Common Pleas of Hancock County finding him guilty of seven (7) separate criminal offenses.
 {¶ 2} This case stems from allegations that defendant-appellant, Thomas Maag, (hereinafter, referred to as "Maag"), had been associated with and acted in furtherance of an entity which became known to law enforcement officials as the "Gonzalez Family Drug Enterprise." From various investigations and surveillance evidence, it was believed that the members and associates of the Gonzalez Family Drug Enterprise were carrying out large-scale drug-trafficking activities throughout several states including Florida, Illinois, Michigan, and Ohio. Based upon that information and the observations of law enforcement officials, Maag was indicted on August 30, 2000, in Hancock County Case No. 2000 CR 202 and was charged with three (3)[1] drug-related felony offenses. Maag was arrested in Columbus, Ohio, on November 18, 2000.
 {¶ 3} Following his arrest and while being held in jail solely for the charges pending in Case No. 2000 CR 202, Maag was again indicted on February 21, 2001, in Hancock County Case No. 2001 CR 48 and was charged with four (4) additional drug-related offenses. In aggregate, Maag was charged with (7) separate felony offenses. See Footnote 1. The matter proceeded to a jury trial, which began on June 9, 2003. The jury trial concluded on June 13, 2003, at which time the jury found Maag guilty of all seven counts. Specifically, as to Case No. 2000 CR 202,[2] Maag was found guilty of two counts of Trafficking in Cocaine in violation of R.C. 2925.03, which are felonies of the third degree, and one count of Possession of Cocaine in violation of R.C. 2925.11(A), which is a felony of the first degree (with the court finding appellant to be a "major drug offender" pursuant to R.C. 2929.01). As to Case No. 2001 CR 48, Maag was found guilty of one count of Complicity to Aggravated Burglary in violation of R.C. 2923.03(A)(2) and (A)(3), which is a felony of the first degree, one count of Funding of Drug Trafficking in violation of R.C. 2925.05(A)(3), which is a felony of the first degree, and two counts of Possession of Cocaine in violation of R.C. 2925.11(A), which are felonies of the first degree (with the court finding appellant to be a major drug offender for each count. See R.C. 2929.01).
 {¶ 4} Thereafter, on August, 11, 2003, the trial court sentenced Maag on all seven convictions to an aggregate term of twenty-four (24) years in prison (journalized by judgment entry on September 5, 2003). In addition to imposition of the prison sentences, the trial court also ordered that Maag's motor vehicle remain impounded and held for future forfeiture proceedings and, lastly, determined that Maag was not entitled to any pre-trial jail time credit toward his sentence in Case No. 2000 CR 202.
 {¶ 5} It is from these judgments of conviction and sentence which Maag now appeals and sets forth eleven assignments of error for our review.
 ASSIGNMENT OF ERROR NO. I Appellant's speedy trial rights were violated when he was not broughtto trial within the time requirements of R.C. 2945.71 et seq.
 {¶ 6} Generally, an accused who has been charged with a felony must be brought to trial within two hundred seventy (270) days of the accused's arrest. See R.C. 2945.71(C)(2). In the case sub judice, Maag was arrested for the various felony charges in Case No. 2000 CR 202 on November 18, 2000. Pursuant to R.C. 2945.71(C)(2), Maag's trial was required to be held within 270 calendar days of his arrest, i.e., by September 5, 2001, unless there were applicable tolling events pursuant to R.C. 2945.72 . On November 20, 2002, which was approximately 461 calendar days in excess of the 270 day time period, Maag moved the trial court to dismiss the charges in Case No. 2000 CR 202 for violation of his speedy trial rights pursuant to R.C. 2945.73(B).[3]
 {¶ 7} Once an accused presents a prima facie case of a violation of his/her speedy trial rights, as Maag did in the case herein, the burden then shifts to the state to produce evidence demonstrating that the accused was not required to be brought to trial within the period of time prescribed by R.C. 2945.71(C)(2). See State v. Butcher (1986),27 Ohio St.3d 28, 31. The state can meet this burden by showing that various tolling events provided by R.C. 2945.72 apply to effectively extend the time in which the accused was to be brought to trial.[4]
 {¶ 8} In response to Maag's motion to dismiss, the state provided the trial court with a detailed list of multiple tolling events which occurred between the date of Maag's arrest on November 18, 2000 and the filing of his motion to dismiss on November 20, 2002. The state calculated that only one-hundred thirty-eight (138) of the 270 days with in which Maag was to be brought to trial in Case No. 2000 CR 202 had elapsed as of November 20, 2002. A hearing was held and the trial court overruled Maag's motion to dismiss.
 {¶ 9} The crux of Maag's argument is that even if the state's tally of 138 elapsed days is accurate, each of the elapsed days should be counted as three days pursuant to the triple-count provision provided by R.C.2945.71(E).[5] By this count, four-hundred eleven (411) days had elapsed between the date of Maag's arrest and the motion date of November 20, 2002. Maag concludes that the trial court erred in failing to dismiss the charges against him in Case No. 2000 CR 202. See R.C. 2945.73(B), supra.
 {¶ 10} The state, however, maintains that because the Ohio Department of Rehabilitation and Correction (hereinafter referred to as the "DRC") issued a parole hold order against Maag on November 28, 2000, in Case No. A235-409, which is a separate and distinct case from the charges contained herein, Maag was not entitled to the triple-count provision provided by R.C. 2945.71(E) from November 28, 2000. Maag asserts, however, that the state failed to prove the validity of the parole hold order allegedly issued by the DRC in Case No. A235-409.[6]
 {¶ 11} The triple-count provision of R.C. 2945.71(E) is only applicable to criminal defendants who are being held in jail solely on the pending charges in the particular case. State v. Pishok, 3d Dist. No. 13-03-43, 2003-Ohio-7118, at ¶ 7, citing, State v. Brown (1992),64 Ohio St.3d 476, 479, citation omitted. In addition, and determinative of the issue herein, the Supreme Court has specifically found that the existence of a valid parole hold order prevents the application of the triple-count provision. Id. The dispute herein, however, centers on the validity of the alleged parole holder issued by the DRC against Maag in Case No. A235-409. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 12} In its "response" to Maag's motion to dismiss, the state attached a copy of the DRC parole hold order as "Exhibit A" for the trial court's review. The face of the parole hold order evinces that it was received and file stamped by the Hancock County Sheriff's Office at 8:43 a.m. on November 28, 2000. The text of the parole hold order states that it was issued by the DRC because Maag was alleged to have violated the terms of his parole in Case No. A235-409.
 {¶ 13} Based upon our review of the transcript from the February 5, 2003 hearing[7] and of the copy of the parole hold order in Case No. 235-409, we find that a valid parole hold order was in force against Maag as of November 28, 2000. Thus, we find that Maag was not entitled to the triple count provision of R.C. 2945.71(E) as of November 28, 2000. Based upon this finding, coupled with our review of the state's calculation of the number of days elapsed between the date of Maag's arrest and the date on which his trial began, we hold that Maag's right to a speedy trial was not violated. Consequently, Maag's first assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. II The trial court erred in failing to properly calculate and attributethe jail time credit to the offenses out of which it arose.
 {¶ 14} Pertinent to this assignment of error, R.C. 2967.191 provides that:
[t]he department of rehabilitation and correction shall reduce thestated prison term of a prisoner * * * by the total number of days thatthe prisoner was confined for any reason arising out of the offense forwhich the prisoner was convicted and sentenced, including confinement inlieu of bail while awaiting trial * * *.
Emphasis added. Accordingly, "R.C. 2967.191 `does not entitle a defendant to jail-time credit for any period of incarceration which arose from facts which are separate and apart from those on which his current sentence is based.'" State v. Russell, 3d Dist. No. 9-03-56, 2004-Ohio-1950, at ¶ 8, citations omitted.
 {¶ 15} Herein, the trial court determined Maag was not entitled to any pre-trial jail time credit toward his sentence in Case No. 2000 CR 202 (journalized on August 20, 2003).
 {¶ 16} In his argument to this court, Maag first asserts that he is entitled to a total of one-thousand (1,000) days pre-trial jail-time credit toward his sentence in Case No. 2000 CR 202 because the state failed to prove the existence of a valid parole hold order. Because we have already determined that a valid parole hold order had been in effect since November 28, 2000, Maag's first argument is without merit. Our analysis of whether Maag is entitled to any pre-trial jail-time credit, however, is not complete.
 {¶ 17} In this regard, Maag asserts that, if the parole hold order had, in fact, become effective on November 28, 2000, the trial court's order that he receive no pre-trial jail-time credit was, nonetheless, made in error. Rather, Maag maintains that, at minimum, the trial court should have granted him ten (10) days of pre-trial jail time credit toward his sentence in Case No. 2000 CR 202. For the reason that follows, we agree.
 {¶ 18} In its August 20, 2003 order denying Maag's request for pre-trial jail time credit, the trial court found that the parole holder issued by the DRC in Case No. A235-409 was in effect from the date of Maag's arrest, i.e., on November 18, 2000. In making this finding, the trial court relied solely upon a letter written on August 18, 2003, by Mark Koester, a Unit Supervisor for the DRC, which stated that the DRC would be "crediting" Maag with 1,005 days of time-served toward the sentence to be imposed upon Maag for the alleged violation of the terms of his parole in Case No. A235-409. Such reliance was error.
 {¶ 19} For confinement purposes, discussed in the first assignment of error, the parole hold order in Case No. A235-409 was not effective against Maag until November 28, 2000. Maag was confined solely for the charges in Case No. 2000 CR 202 from November 18, 2000, until November 28, 2000. Consequently, Maag's sentence in Case No. 2000 CR 202 must be reduced pursuant to R.C. 2967.191, supra, by ten (10) days.[8]
 {¶ 20} Maag's second assignment of error is, therefore, sustained.
 ASSIGNMENT OF ERROR NO. III Appellant's convictions are not supported by sufficient evidence,thereby denying him due process of law. Fourteenth Amendment,United States Constitution; Section 16, Article I, Ohio Constitution.
 {¶ 21} Maag's argument within this assignment of error pertains only to the convictions rendered against him for Count Five in Case No. 2000 CR 202 and Count Two in of Case No. 2001 CR 48 (hereinafter referred to as "Count Five" and "Count Two"), which respectively charged, in pertinent part, that on or about November 1, 1999 and November 3, 1999, Maag "knowingly possessed cocaine in an amount in excess of one thousand (1,000) grams." Because these two convictions are part of the same chain of events and are, in part, intrinsically related, we review them together.
 {¶ 22} The essential facts which led to Maag being charged with the offenses of possession of cocaine in Counts Five and Two follow.[9]
 {¶ 23} Regarding Count Five, the state sought to prove that on or about November 1, 1999, Maag, Roger Gonzalez, Michael Harpe, and Brian Shetzer traveled together by automobile from Findlay, Ohio to Adrian, Michigan for the purpose of acquiring four kilograms of cocaine; that after acquiring the cocaine, Maag and the three other men delivered three of the four kilograms of cocaine to one of Gonzalez's associates in Toledo, Ohio; that the four men then drove back to Findlay with the remaining kilogram of cocaine, which was delivered to the home of Ryan Black, wherein, the cocaine was stored and locked in a safe belonging to Black.
 {¶ 24} In Count Two, the state alleges that, subsequent to the above described events, on or about November 3, 1999, Maag, Chad Valentine, and William Maag (brother of the appellant herein) burglarized Black's house and stole Black's safe which contained the same kilogram of cocaine that had been acquired in Adrian, Michigan, as alleged in Count Five, supra.
 {¶ 25} Under this assignment of error, and as to both Counts Five and Two, Maag first asserts that the evidence was insufficient to prove beyond a reasonable doubt that the substance he is accused of having possessed on these two occasions was, in fact, "cocaine in excess of 1,000 grams." In addition, solely as to Count Five, Maag further asserts that the state failed to prove beyond a reasonable doubt that he knowinglypossessed cocaine, or any controlled substance for that matter, when he accompanied Gonzalez, Harpe, and Shetzer on the trip to Adrian, Michigan. For the reasons that follow, we find sufficient evidence exists to support the convictions rendered against Maag for both Counts Five and Two.
 {¶ 26} When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court is not to assess "whether the state's evidence is to be believed," but, rather, is required to determine "whether the evidence, if believed, supports the conviction."State v. Jenks (1981), 61 Ohio St.3d 259, paragraph two of the syllabus, parallel citation omitted, emphasis added. The relevant inquiry, therefore, is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 27} Because the state relied in large part upon the testimonial evidence provided by Brian Shetzer and Chad Valentine to prove the essential elements of the crimes charged by Counts Five and Two, supra, we begin our review of the evidence by examining the content of their testimony.
 {¶ 28} Shetzer's testimony is most pertinent Count Five, and has been concisely summarized as follows:
(1) Shetzer, Maag, Gonzalez, and Michael Harpe drove together in the same motor vehicle to Adrian, Michigan, for the purpose of obtaining drugs;
(2) once they arrived at a residential home near Adrian, Michigan, Gonzalez, Harpe and Maag entered into the residence while Shetzer stayed in the automobile;
(3) Gonzalez, Harpe, and Maag then exited the residence with a black duffle-bag which was placed in the trunk of the car and the four of them began their drive back to Ohio;
(4) during the drive back, Shetzer learned from statements made by one of the car's other occupants (the testimony is unclear as to who actually made the statement), that the black duffle-bag contained "4 kilograms of cocaine" [which is equivalent to 4,000 grams];
(5) before returning to Findlay, a stop was made in Toledo, Ohio, where Gonzalez dropped off three of the four kilograms of cocaine to one of his associates;
(6) the group of four then drove back to Findlay, Ohio, where Gonzalez and Maag were dropped off at Gonzalez's girlfriend's house and Shetzer "drove the car, along with Harpe, with the [remaining] kilo[gram] ofcocaine" [which is equivalent to 1,000 grams], to Ryan Black's house on Defiance Avenue in Findlay, Ohio;
(7) once he and Harpe arrived at Black's residence, Shetzer personally delivered the remaining kilogram of cocaine to Black and personally witnessed Black place the kilogram of cocaine in Black's safe, which was located in Black's bedroom-closet;
(8) and lastly, Shetzer testified that he was later informed by Gonzalez that the safe containing the kilogram of cocaine had been stolen from Black's house.
 {¶ 29} Shetzer offered no further testimony in regards to either the theft of Black's safe or the kilogram of cocaine allegedly contained therein. However, where Shetzer's testimony ends, Valentine's begins.
 {¶ 30} Valentine's testimony is most relevant to Count Two and, in pertinent part, may be fairly and concisely summarized as follows:
(1) while at Valentine's house, Maag stated to Valentine that there was a kilogram of cocaine in a safe at Black's house and further offered that, if he helped Maag steal the safe, Maag would forgive a debt that Valentine owed to Maag;
(2) after Valentine and William Maag (the appellant's brother) stole the safe from Black's "bedroom-closet," Thomas Maag drove the three of them to William Maag's residence where the three of them removed from the safe an "untouched" kilogram plus an additional 24 ounces of cocaine that "had already been made up" [equivalent to approximately 1,678 grams];
(3) Maag then placed the kilogram and the 24 ounces of prepared cocaine in a safe located in the basement of his brother's (William Maag) residence;
(4) Maag gave William Maag twenty (20) ounces of the one kilogram and 24 ounces of cocaine that they had recovered from the safe, and Maag (the appellant herein) kept the rest of the cocaine [i.e., one kilogram and four ounces, which is equivalent to approximately 1,113 grams];
(5) and lastly, on the day after the robbery, Valentine and Maag "broke" down and "cut" up the unprepared kilogram of cocaine that had been stolen from the safe.[10]
 {¶ 31} Having reviewed the evidence most germane to Counts Five and Two, we find that, if the testimony provided by Shetzer and Valentine is taken as true, it proves beyond a reasonable doubt that the substance at issue in Counts Five and Two was "cocaine in an amount in excess of 1,000 grams."
 {¶ 32} Next, and solely as to Count Five, Maag asserts that the state failed to prove that he knowingly possessed cocaine, as required by R.C.2925.11(A).[11] For the reasons that follow, we disagree.
 {¶ 33} When proving a violation of R.C. 2925.11(A), it has been widely held that the essential element of "possession" may: (a) take the form of constructive possession; (b) be proven by circumstantial evidence alone; or (c) may occur either through individual or joint possession. See Statev. Kelch, 12th Dist. No. CA2002-02-003, 2002-Ohio-6875, State v. Gibson
(May 6, 1998), Summit App. No. 18540. In addition, in order to prove a violation of R.C. 2925.11(A), the state is not required to prove the depth of the accused's "knowledge," rather, as provided by R.C. 2901.22(B):
a person acts knowingly, regardless of his purpose, when he is awarethat his conduct will probably cause a certain result or will probably beof a certain nature. A person has knowledge of circumstances when he isaware that such circumstances probably exist." Emphasis added.
 {¶ 34} Accordingly, despite Maag's argument to the contrary, we find that the evidence presented, if believed, would prove beyond a reasonable doubt that Maag "knowingly possessed cocaine in an amount in excess of 1,000 grams" at the time alleged in Count Five.
 {¶ 35} Lastly, and solely as to Count Five, Maag asserts the trial court erred by admitting the portion of Shetzer's testimony in which he stated that the substance that had been acquired from Adrian, Michiganwas "four kilograms of cocaine." Specifically, Maag argues Shetzer's testimony should have been excluded under Evid.R. 701 as either unreliable or otherwise falling outside the scope of the rule because: (1) the state failed to lay a proper foundation that Shetzer was qualified to testify as to the identity of a controlled substance and (2) Shetzer's testimony was predicated on statements of third parties and was not rationally based upon his own perceptions. For the reasons that follow, we find these arguments to be without merit.
 {¶ 36} At the outset, we note that a trial court has broad discretion to admit or exclude relevant evidence. State v. Castile, 6th Dist. No. E-02-012, 2005-Ohio-41, at ¶ 36, citing State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Accordingly, absent an abuse of discretion, we may not disturb the trial court's decision to allow Shetzer's identification testimony to be admitted into evidence. Id.
 {¶ 37} Pursuant to the Supreme Court of Ohio's decision in State v.McKee, 91 Ohio St.3d 292, 297, 2001-Ohio-41, a lay witness may testify as to the identity of a controlled substance if the foundational requirements of Evid.R. 701(1) are first met:
[i]f the witness is not testifying as an expert, his testimony in theform of opinions or inferences is limited to those opinions or inferenceswhich are (1) rationally based on the perception of the witness and (2)helpful to a clear understanding of his testimony or the determination ofa fact in issue[.]
We further read McKee to mean that the mandates of Evid.R. 701(1) may be satisfied if the competence of the proposed drug identification lay witness is first established by providing the court with a foundation that demonstrates that the lay witness has a sufficient amount of experience and knowledge either from having dealt with or having used the same type of controlled substance in the past that he or she is now being asked to identify. See McKee, 91 Ohio St.3d at 297.
 {¶ 38} In McKee, the Court found the testimony to be insufficient and excludable because the evidence lacked: (1) testimony of the witnesses' prior experiences with the drug (specifically, marijuana); (2) testimony regarding a description of the actual appearance of the drug; and (3) testimony regarding any physical effects felt by the witnesses when the drug was ingested at the time of the alleged offense. Id. Unlike the circumstances in McKee, the prosecution in the case sub judice laid a sufficient foundation to establish that Shetzer was qualified to offer lay witness testimony as to whether the substance was "cocaine."
 {¶ 39} Specifically, Shetzer testified that he had been a habitual cocaine abuser and also provided testimony regarding the sophistication and magnitude of the cocaine trafficking activities that he had been exposed to, and/or had participated in as an associate of the Gonzalez family drug enterprise.[12]
 {¶ 40} Because the extent of Shetzer's knowledge and experiences with cocaine and cocaine trafficking establishes a proper foundation, the state was not required to prove, as argued by Maag in his brief to this court, that Shetzer actually ingested the substance at the time of the alleged offense in order for him to be qualified to testify as to the identification of the controlled substance alleged herein to be cocaine. For example, see State v. Rubio (1990), 110 N.M. 605, 608, citation omitted, ("When there is sufficient circumstantial evidence * * * it is unnecessary that a user familiar with the drug testify as to having sampled it."); U.S. v. Paiva (1989), 892 F.2d 148, 157, ("Although a drug user may not qualify as an expert, he or she may still be competent, based on past experience and personal knowledge and observation, to express an opinion as a lay witness that a particular substance perceived was cocaine or some other drug.").
 {¶ 41} Moreover, Shetzer's opinion testimony was not based solely upon the statement made by one of the other men in the car during the drive back from Adrian, Michigan. Rather, Shetzer's opinion was also based on a large amount of circumstantial evidence (discussed in greater detail in Maag's fourth assignment of error, infra) and the fact that he delivered the remaining "kilogram of cocaine" to Black and personally witnessed Black lock the kilogram of cocaine in Black's safe.
 {¶ 42} Based upon the preceding, we find that Shetzer's identification testimony meets the requirements of Evid.R. 701(1), supra, and, therefore, hold that the trial court did not abuse its discretion when it overruled Maag's objection to admission of Shetzer's drug identification testimony.
 {¶ 43} Having determined all of Maag's arguments as to this assignment of error to be without merit, we overrule Maag's third assignment of error.
 ASSIGNMENT OF ERROR NO. IV Appellant's convictions are against the manifest weight of theevidence, thereby denying him due process of law. Fourteenth Amendment,United States Constitution; Section 16, Article I, Ohio Constitution.
 {¶ 44} In this assignments of error, Maag asserts that six of the seven convictions rendered against him (the lone exception being the conviction for complicity to commit aggravated burglary, to wit: Count One in Case Number 2001 CR 48), are not supported by the weight of the evidence and must be reversed and remanded for a new trial.
 {¶ 45} Sufficiency is a test of the adequacy of the evidence. Weight of the evidence, however, concerns the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citation omitted. Accordingly, when considering the weight of the evidence, an appellate court examines the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[t]he discretionary power to reverse a conviction and grant a new trial, however, may only be exercised in exceptional cases where the evidence weighs heavily against conviction." Id.
 {¶ 46} The six convictions which Maag asserts are against the manifest weight of the evidence have been reviewed in combination with one another, where appropriate, and in the following order:
A. two counts of Possession of Cocaine, specifically, Count Five in Case No. 2000 CR 202 and Count Two in 2001 CR 48;
B. two counts of Trafficking in Cocaine, specifically, Counts Two and
Three in Case No. 2000 CR 202;
C. Aggravated Funding of Drug Trafficking, specifically, Count Three in Case No. 2001 CR 48; and,
D. one count of Possession of Cocaine, specifically, Count Four in Case No. 2001 CR 48.
Two counts of Possession of Cocaine, specifically Count Five in CaseNo. 2000 CR 202 and Count Two in 2001 CR 48.
 {¶ 47} Maag first contends that because Shetzer and Valentine were convicted felons, had extensive histories of drug abuse, and were testifying pursuant to plea agreements, that their testimony, per se, lacked all credibility. Taken one step further, Maag maintains that because the state relied solely upon their testimony to prove the charges set forth by Counts Five and Two, the record was, in effect, devoid of any evidence upon which the jury could have found beyond a reasonable doubt that Maag was guilty of the charges set forth in Counts Five and Two. For the reasons that follow, we find Maag's argument to be without merit.
 {¶ 48} When reviewing a criminal conviction for the manifest weight of the evidence, we are mindful that the original trier of fact is in the best position to judge the credibility of witnesses and is, therefore, better suited to determine the amount of weight to assign to a particular witness's testimony. See State v. DeHass (1967), 10 Ohio St.2d 230. Thus, the determination of a witness's credibility is primarily left to the province of the jury. Id. In fact, "[a]n appellate court abuses its discretion by substituting its judgment for that of the trier of fact as to the credibility of the witnesses." State v. Ramirez, 10th Dist. No 01AP-859, 2002-Ohio-4298, at ¶ 27.
 {¶ 49} The record of the case sub judice makes clear that the jury herein had expressly, and on multiple occasions, been made aware that: Shetzer and Valentine were convicted felons, had histories of drug abuse, and were testifying pursuant to plea agreements. Being so informed, the jury was capable of fully considering each witnesses' demeanor and motivation, and could further evaluate their testimony within the context of the entirety of the evidence presented throughout the course of the trial. Thus, having reviewed the transcript from the trial, we are unable to conclude that the jury clearly lost its way and created such a manifest miscarriage of justice that its verdict must be reversed.
 {¶ 50} In Maag's second argument, he asserts that because neither Shetzer nor Valentine testified as to having actually ingested the substance in question at the time of the alleged offenses, their testimony, even if fully considered, is, nevertheless, insufficient to prove beyond a reasonable doubt that the substance he possessed on the two occasions alleged by Counts Five and Two was "cocaine."
 {¶ 51} It has been widely held and accepted that an essential element of a crime may be proven by circumstantial evidence alone.[13]
Additionally, and pertinent to the case sub judice, various federal and state courts have frequently held that, even in cases where there may be a lack of direct evidence, there are situations in which the identity of a controlled substance may be proven beyond a reasonable doubt solely through the presentation of circumstantial evidence. For example, seeState v. Watson (1989), 231 Neb. 507, 514, citing United States v.Harrel (1984), 737 F.2d 971, ("Identification of a controlled substance does not require direct evidence if the available circumstantial evidence establishes the identification beyond a reasonable doubt."); see also,State v. Rubio (1990), 110 N.M. 605. As demonstrated by our analysis below, we find that application of many of the factors and fact patterns prevalent to these cases demonstrates that the entirety of the evidence weighs heavily in favor of conviction and supports the jury's finding that, on both occasions as alleged in Counts Five and Two, Maag possessed "cocaine in an amount in excess of 1,000 grams."
(1) Testimony by witnesses who have a significant amount of past experience with the drug in question:
Both Shetzer and Valentine had significant past experience with cocaine[14] and testified that the substance in question in Counts Five and Two was "cocaine;"
(2) Prior involvement by the defendant in drug trafficking:
Detailed evidence was presented by the prosecution concerning the sophisticated nature of the drug trafficking operations performed by associates of the Gonzalez family drug enterprise. Maag was known to be an associate of this enterprise, as evidenced by testimony from Shetzer and Valentine (see Maag's third assignment of error, supra), and from observations made by law enforcement officials;
(3) The privacy or secretiveness of the transaction:
Shetzer testified (as to Count Five) that the substance acquired in Adrian, Michigan was kept concealed, was stored in the trunk of the car, and was ultimately locked in Black's safe; the secretive nature of the activity in Count Two, testified to by Valentine is patent, e.g., breaking and entering Black's residence under the cover of night to steal Black's safe;
(4) Behavior characteristic of sale and use of a particular substance, such as testing, weighing, cutting, and peculiar ingestion:
Both Shetzer and Valentine testified that they had been on several drug-runs with Gonzalez to various locations, such as Chicago, Florida, and, in particular, Adrian, Michigan for the express purpose of obtaining "cocaine." On the day following the robbery of Black's safe, Valentine and Maag "broke" the cocaine down and "cut" it up. See Footnote 12, supra;
(5) Evidence that the substance was called by the name of the illegal narcotic by the defendant or others in his presence:
Testimony is replete with examples of the substance at issue in this case being referred to as cocaine. For example, the conversation in the car on the way back from Adrian, Michigan and when Maag solicited Valentine to help steal the safe from Ryan Black's residence because it contained a "kilogram of cocaine."
 {¶ 52} To paraphrase a popular expression: if it looks like a duck, walks like a duck, and quacks like a duck, it is reasonable to infer that is a duck. Likewise, if a substance is sought after like cocaine, handled like cocaine, and referred to in conversation as cocaine, it is reasonable for a jury to conclude beyond a reasonable doubt that it wascocaine. Thus, while neither Shetzer nor Valentine testified that they had tasted or otherwise ingested the substance at issue, the totality of the circumstantial evidence clearly supports an inference that the substance acquired from Adrian, Michigan and subsequently stolen from Black's safe was "cocaine."
 {¶ 53} Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we find that the greater weight of credible evidence supports the conclusion that it had been proven beyond a reasonable doubt that on both occasions, as alleged in Counts Five and Two, Maag possessed cocaine in an amount in excess of 1,000 grams. Accordingly, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice in rendering its verdicts against Maag for Counts Five and Two.
B. Trafficking in Cocaine — Counts Two and Three in Case No. 2000 CR202.
 {¶ 54} Maag next maintains that these two convictions for "trafficking in cocaine" are against the manifest weight of the evidence. The state of the evidence regarding these two convictions has been addressed in detail in our review of Maag's seventh assignment of error, infra. In accordance with our analysis therein, we do not find that the jury clearly lost its way and created a manifest miscarriage of justice in finding Maag guilty of Counts Two and Three in Case No. 2000 CR 202.
C. Aggravated Funding of Drug Activity — Count Three in Case No. 2001CR 48.
 {¶ 55} Maag was convicted of Count Three in Case No. 2001 CR 48, which specifically charged, in pertinent part, that, between January 1, 2000, and March 17, 2000, Maag, while in Findlay, Ohio, Hancock County, "knowingly provided money to Roger Gonzalez with the purpose that the said Roger Gonzalez use the money to obtain cocaine in an amount in excess of five (5) grams for the purpose of selling said cocaine (hereinafter, referred to as "funding of a dug activity"). See R.C.2925.05.
 {¶ 56} The only issue raised herein by Maag is whether the state provided sufficient proof of venue. Specifically, sufficient proof that the offense did, in fact, occur in Hancock County. Maag contends that the state failed in this regard and, therefore, these two convictions must be reversed and remanded for a new trial.
 {¶ 57} Pertinent to the issue raised herein, Ohio's criminal venue statute provides in material part that: "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element thereof was committed." R.C. 2901.12(A). Maag correctly states in his brief to this court that although venue is not a material element of a criminal offense, it is a fact which must be proved beyond a reasonable doubt. SeeState v. Aranda, 3d Dist. No. 9-02-41, 2003-Ohio-392, ¶ 9, emphasis added, citing R.C. 2901.12, State v. Headley (1983), 6 Ohio St.3d 475,477-478. It has, however, been widely held that the prosecution is not required to prove venue in express terms so long as venue is established by all facts and circumstances of the case. Id., citing Headley,6 Ohio St. 3d at 477.
 {¶ 58} In the case herein, Shetzer and Valentine provided the jury with the following testimony: early in the year 2000, a group consisting of Shetzer, Valentine, Roger Gonzalez, and Juan Castillo, traveled together[15] from Findlay, Ohio to Homestead, Florida with approximately $24,000 in cash;[16] the $24,000 in cash was kept concealed and hidden inside of a box of laundry detergent; the box of laundry detergent was kept in the trunk of car throughout the trip; once they arrived in Homestead, Florida, Castillo and Gonzalez purchased one kilogram of cocaine with the money that had been stored in the laundry detergent box; and, finally, the four of them returned to Findlay, Ohio, in the same car with the kilogram of cocaine.
 {¶ 59} In addition, it is uncontroverted that Maag and Gonzalez lived and resided in Findlay, Hancock County, Ohio during the time period in which the offense of funding of a drug activity was alleged to have occurred. Furthermore, the evidence substantially proved that, during this same period of time, Maag was associated and participated in cocaine trafficking activities with Roger Gonzalez, a known associate and figurehead of the Gonzalez Family Drug Enterprise.
 {¶ 60} In light of the described evidence, we find that the state provided the jury with ample facts and circumstances upon which a reasonable juror could conclude beyond a reasonable doubt that the crime of funding a drug activity had, in fact, occurred in Hancock County. Thus, Maag's conviction for aggravated funding of a drug activity is affirmed.
D. Possession of Cocaine — Count Four in Case No. 2001 CR 48.
 {¶ 61} Count Four in Case No. 2001 CR 48 specifically charged that between January 1, 2000 and March 17, 2000, while in Findlay, Ohio, Maag knowingly possessed an amount of cocaine in excess of 1,000 grams. This charge specifically stems from the state's allegation that the cocaine allegedly purchased in Homestead, Florida (as charged in Count Three in Case No. 2001 CR 48, supra), was transported and subsequently delivered to Maag in to Findlay, Ohio.
 {¶ 62} The sole issue raised by Maag regarding this conviction is, whether the state proved beyond a reasonable doubt that the substance he allegedly possessed was, in fact, "cocaine in excess of 1,000 grams." Despite Maag's arguments to the contrary, we affirm the jury's verdict.
 {¶ 63} The jury herein was presented with direct evidence from Shetzer and Valentine, who provided the jury with corroborating testimony regarding the "identity and quantity" of the substance that had been obtained in Homestead, Florida. Specifically, both Shetzer and Valentine testified that: (a) they were each directly involved and present during the purchase of "a kilogram of cocaine" from Homestead, Florida; (b) while in the hotel room in Homestead, Florida, both of them tasted, tested, and ingested the substance; (c) the effects they felt after having ingested said substance were consistent with the effects they had experienced from using cocaine in the past; (d) the amount of cocaine purchased on this particular occasion was "one kilogram" (which is equivalent to 1,000 grams); and lastly, each of them testified that, (e) following the purchase, the four of them (Shetzer, Valentine, Castillo, and Gonzalez) drove back to Findlay, Ohio in the same automobile with the kilogram of cocaine.
 {¶ 64} Accordingly, we find that the jury did not clearly lose its way or create a manifest miscarriage of justice in finding Maag guilty of possession of cocaine in excess of 1,000 grams as charged in Count Four in Case No. 2001 CR 48.
 {¶ 65} Having determined that the six contested convictions addressed in this assignment of error are not against the manifest weight of the evidence, we hereby overrule Maag's fourth assignment of error.
 ASSIGNMENT OF ERROR NO. V The trial court erred by permitting the introduction of Other ActsEvidence in violation of Evid.R. 404; Evid.R. 403.
 {¶ 66} In this assignment of error, Maag asserts that the trial court abused its discretion by failing to exclude the testimony of Mark Apple, a Special Agent for the Ohio Bureau of Criminal Investigations, (hereinafter, "Agent Apple"). Maag specifically asserts that Agent Apple's testimony regarding the alleged existence and activities of the "Gonzalez Family Drug Enterprise" should have been excluded as improper "other acts evidence" in violation of Evid.R. 404(B), or was otherwise unfairly prejudicial and, therefore, should have been excluded pursuant to Evid.R. 403(A).
 {¶ 67} A trial court enjoys broad discretion in the admission and exclusion of evidence. State v. Hymore (1967), 9 Ohio St.2d 122, 128. Our review, therefore, is limited to determining whether the trial court abused its discretion.
 {¶ 68} Evid.R. 404(B) provides:
[e]vidence of other crimes, wrongs, or acts is not admissible to provethe character of a person in order to show that he acted in conformitytherewith. It may, however, be admissible for other purposes, such asproof of motive, opportunity, intent, preparation, plan, knowledge,identity, or absence of mistake or accident.[17]
 {¶ 69} This court has previously held that other acts evidence is admissible under Evid.R. 404(B), if the "other acts" being offered into evidence "* * * `form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.'" State v.Elam, 3d Dist. No. 5-02-57, 2003-Ohio-1577, at ¶ 15, quoting State v.Lowe (1994), 69 Ohio St.3d 527, 531, quoting State v. Curry (1975),43 Ohio St.2d 66, 73. We find this to be just such an instance.
 {¶ 70} Agent Apple's testimony regarding the "Gonzalez Family Drug Enterprise," went not only to the "immediate background" of the facts supporting several of the criminal offenses for which Maag had been charged, but also tended to prove Maag's opportunity, intent, and knowledge to engage in various drug-related criminal activities. For example, the state's other acts evidence regarding Maag's consistent interaction and involvement with Roger Gonzalez was admissible to show that Maag had constructive knowledge that the purpose of the trip to Adrian, Michigan was to obtain cocaine. Likewise, Agent Apple's testimony was admissible to show that Maag had knowledge that Ryan Black's safe contained cocaine and, that Maag's motive for stealing Black's safe was to gain possession of the kilogram of cocaine locked in it. Accordingly, we find that the testimony provided by Agent Apple was admissible under Evid.R. 404(B).
 {¶ 71} The remaining issue to be determined is whether Agent Apple's testimony conforms to the requirements of Evid.R. 403(A), which provides that, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 72} Despite Maag's arguments to the contrary, we find that the probative value of the testimony provided by Agent Apple was not outweighed by the danger of unfair prejudice to Maag. In this regard, we note that the trial court provided a cautionary instruction which expressly informed the members of the jury that any evidence regarding the existence and/or alleged organized criminal activity of the "Gonzalez Family Drug Enterprise" was only admitted for foundational purposes and
that such evidence was not to be considered either as direct or circumstantial evidence against Maag.
 {¶ 73} Based upon the foregoing, we find that the trial court did not abuse its discretion by admitting Agent Apple's testimony. Thus, Maag's fifth assignment of error is hereby overruled.
 ASSIGNMENT OF ERROR NO. VI The trial court erred in admitting excessive evidence about the allegeddrug enterprise when the probative value of the evidence wassubstantially outweighed by unfair prejudice. Fourteenth Amendment,United States Constitution; Section 16, Article I, Ohio Constitution;Evid.R. 403(A) and (B).
 {¶ 74} In addressing Maag's sixth assignment of error, we begin by noting that the Supreme Court of Ohio has previously held that, pursuant to Evid.R. 801(D)(2)(e),[18] even in cases where a criminal defendant is not charged with the substantive crime of conspiracy, the prosecution, may, lawfully introduce evidence tending to prove the existence of a conspiracy in order to introduce out-of-court statements made by co-conspirators. See State v. Robb, 88 Ohio St.3d 59, 68,2000-Ohio-275, citations omitted.
 {¶ 75} In this assignment of error, Maag maintains that pursuant to Evid.R. 403(A) and 404(B),[19] although "relevant," the probative value of the state's presentation of cumulative testimony of a "conspiracy" and evidence of the intricacies of the "Gonzalez Family Drug Enterprise" was excessive and resulted in unfair prejudice.
 {¶ 76} A similar issue has previously been determined by this court inState v. Maag, 3d Dist. No. 5-01-49, 2002-Ohio-3953.[20] While not "identical" of all of the facts, circumstances, and evidence presented in the case presently before us, our holding in Maag, 2002-Ohio-3953, is, nevertheless, relevant and applicable to the case sub judice. In Maag,
2002-Ohio-3953, at ¶ 28, we held that:
[t]his case involved an intricate, large-scale drug operation, spanningmultiple states, which utilized numerous people to conduct its business.Demonstrating its existence and the way in which its business wasconducted to a jury unfamiliar with the drug world, required considerableevidence. We do not find that the number of exhibits was so great so asto amount to the needless presentation of cumulative evidence [see,Evid.R 403(B)] or that its probative value was substantially outweighedby the danger of unfair prejudice to the defendant [see Evid.R. 403(A)].
 {¶ 77} Instead of alleging error regarding the admission of cumulative exhibits, it is alleged by Maag herein that the trial court erred by allowing the admission of cumulative testimony. Contrary to Maag's argument, we find that the evidence now be objected to by Maag was integral to the state's case in chief and went toward proving the elements of several of the criminal offenses for which Maag had been indicted, including aggravated funding of a drug activity, possession of cocaine, and trafficking in cocaine. The evidence tending to prove the existence of the Gonzalez Family Drug Enterprise was especially necessary considering the fact that Maag, at times, defended on the basis that he did not "knowingly" possess cocaine, or that the state failed to sufficiently prove the "identity and quantity" of the substance alleged to cocaine. In addition, proof of a "conspiracy" between Valentine, Willie and Thomas Maag was admissible as proof tending to prove the elements of "complicity to commit aggravated burglary," as charged against Maag in Count One of Case No. 2002 CR 48.[21]
 {¶ 78} Accordingly, having reviewed the record, including the transcripts from the jury trial, we do not find that the quantity of evidence admitted in this regard was either excessive or needless. Further, the probative value of the evidence was not substantially outweighed by danger of unfair prejudice to the appellant.
 {¶ 79} Accordingly, Maag's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR NO. VII The trial court erred in failing to order the disclosure of theidentity of a confidential informant used in controlled purchasesallegedly involving Appellant.
 {¶ 80} Counts Two and Three in Case No. 2000 CR 202 charged Maag with two counts of trafficking in cocaine. As provided by the bill of particulars, the state sought to prove that on February 3, and February 15, 2000, Maag sold cocaine to Agent Apple. The two "controlled sales" of cocaine were accomplished through the states' use of a confidential informant who acted as an intermediary between Maag and Agent Apple. Specifically, on both occasions, Agent Apple and the confidential informant drove together in Agent Apple's car and met with Maag in the parking lot of a business establishment. While Agent Apple did not physically make the exchange of money for cocaine with Maag, he was in close proximity to Maag's motor vehicle where he could observe the confidential informant enter into Maag's car. The informant would then return to Agent Apple's car with a baggie containing a substance represented by Maag to be cocaine.
 {¶ 81} On both occasions, after the informant returned to Agent Apple's vehicle with the baggie[s], Agent Apple made a preliminary inspection of the substance contained therein and agreed to make the purchase. Agent Apple then gave money to the informant, who would then, in turn, give the money to Maag. In particular, the exchange of money during the second controlled sale on February 15, 2000, occurred when Maag drove his vehicle beside Agent Apple's parked vehicle and the informant, while sitting in Agent Apple's vehicle, tossed an envelope of money into Maag's car window. During this exchange of money, Agent Apple actually spoke to Maag and had a brief conversation about the amount of money exchanged during the previous February 3, 2000, sale.
 {¶ 82} On January 18, 2001, counsel for Maag moved the trial court to require the state to disclose the identity of the confidential informant who was utilized by the state during the two "controlled buys." Maag's request was heard on February 5, 2003, during which the state informed Maag and the trial court that it did not intend to call the confidential informant as a witness in its case against Maag. In partial reliance on the statements made by the state, the trial court overruled Maag's motion to disclose the identity of the confidential informant (journalized on June 9, 2003). Maag asserts that the trial court erred in so doing.
 {¶ 83} Maag specifically relies on State v. Williams (1983),4 Ohio St.3d 74, in which the Ohio Supreme Court held that:
[t]he identity of an informant must be revealed to a criminal defendantwhen the testimony of the informant is vital to establishing an elementof the crime or would be helpful or beneficial to the accused inpreparing or making a defense to criminal charges.
 {¶ 84} Williams, 4 Ohio St.3d at paragraph one of the syllabus, emphasis added. In this regard, Maag specifically maintains because Agent Apple did not have a clear view of Maag physically handing the alleged cocaine to the confidential informant during the controlled buys, the state's confidential informant was "vital" to the state's case and, therefore, the informant's identity was required to be disclosed. For the reasons that follow, we do not find Maag's seventh assignment well taken.
 {¶ 85} The transcript from the jury trial reveals that the state did not call the informant as a witness. In addition, Agent Apple testified that: he was visually able to see the informant and Maag when the informant was in Maag's car to acquire the drugs; he made preliminary examinations of the substance before agreeing to purchase it; on the first occasion he bought one ounce of cocaine in exchange for $1,100 paid to Maag, and on the second occasion he purchased two ounces of cocaine for $2,100; that the substances obtained from Maag appeared to be cocaine; and, through subsequent scientific testing, he learned that the substances were, in fact, cocaine.
 {¶ 86} In addition, the state also admitted the following exhibits into evidence to support the charges of trafficking in cocaine: (1) documents from the laboratories confirming that substances obtained by Agent Apple from Maag were "cocaine;" (2) the actual baggies and cocaine acquired by Agent Apple from Maag on these two occasions (admitted as the state's "Exhibit 1"); and, (3) audio tapes of the controlled buy that had been recorded from inside of Agent Apple's car, which, at minimum, corroborate that the transactions occurred in the manner in which Agent Apple testified. Moreover, Sergeant Scott Lowry of the Findlay Police Department, who ran surveillance of the February 3, and 15, 2000 controlled buys, also testified during the jury trial and, for all intents and purposes, corroborated Agent Apple's account of the alleged cocaine sales.
 {¶ 87} Accordingly, based upon the wealth of evidence presented by the state, we do not find that the testimony of the confidential informant was "vital" to the state establishing the elements of the "trafficking in cocaine" counts charged against Maag. Moreover, it is unclear from the record or Maag's brief how the confidential informant's testimony would have been beneficial to Maag's defense.[22]
 {¶ 88} For all of the foregoing reasons, we hold that the trial court did not err in overruling Maag's motion to disclose the identity of the state's confidential informant. See Williams, 4 Ohio St.3d 74. Maag's seventh assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. VIII The trial court erred in failing to permit appellant to introduce anddevelop evidence of prosecutorial coercion of a state witness in supportof his Crim.R. 33 Motion for a New Trial.
 {¶ 89} During Maag's sentencing hearing held on August 11, 2003, trial counsel for Maag moved the court pursuant to Crim.R. 33 for a new trial. In support of this motion, counsel for Maag requested that the trial court supplement the record with a letter allegedly written to Maag by Brian Shetzer. In the letter, Shetzer asserts that he had been coerced by the prosecution into testifying against Maag.
 {¶ 90} Maag's motion for a new trial was specifically based upon the grounds set forth by Crim.R. 33(A)(2) and (A)(6), which respectively provide, in relevant part, that a trial court may grant a defendant a new trial if there is "[m]isconduct of the jury, prosecuting attorney, or the witnesses for the state[,]" or if "new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. * * *"
 {¶ 91} While the trial court admitted the letter purportedly written by Shetzer into the record, thereby making the letter available for our review, it overruled Maag's request to consider the letter in support of his Crim.R. 33 motion for a new trial. Maag asserts that the trial court erred in so doing.
 {¶ 92} A decision to grant or deny a motion for a new trial is within the sound discretion of the trial court. State v. Miller (January 11, 1995), 3d Dist. No. 4-93-24, citing State v. Schiebel (1990),55 Ohio St.3d 71, paragraph one of the syllabus. Accordingly, our review is limited to determining whether the trial court abused its discretion.
 {¶ 93} Crim.R. 33(A)(2) and Crim.R. 33(A)(6) require that new trial motions must be supported by affidavit. See Crim.R. 33(C) and Crim.R. 33(A)(6).[23] In the case sub judice, it is undisputed that the letter was not in the form of an affidavit nor was it supported by affidavit. Consequently, pursuant to Crim.R. 33(C) and Crim.R. 33(A)(6), we hold that the trial court did not abuse its discretion in refusing to consider Shetzer's letter in support of Maag's Crim.R. 33(A)(2) and (A)(6) motion for a new trial.
 {¶ 94} However, Maag further asserts that pursuant to Crim.R. 33(A)(6), because Shetzer's letter was "newly discovered evidence," the trial court should have provided Maag with an extension to allow him time in which to acquire an affidavit from Shetzer. For the reasons that follow, we disagree.
 {¶ 95} While Crim.R. 33(A)(6) provides, in part, that "* * * if time is required by the defendant to procure such affidavits, the court may
postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case[,] * * *" the Rule also provides that a motion for a new trial should only be granted where "* * * the defendant could not with reasonable diligence have discovered and produced [the new evidence] at trial." We do not find this to be such a case.
 {¶ 96} Trial counsel for Maag was fully aware that Shetzer was being called as a witness for the state and had ample opportunity to prepare for its cross-examination Shetzer and should have discovered whether there was evidence that Shetzer had been "coerced" by the state prior to trial. Moreover, trial counsel for Maag never requested a postponement of the hearing in order to obtain an affidavit from Shetzer. Accordingly, we do not find that the trial court erred in failing to sua sponte grant Maag a postponement to allow Maag to obtain a supporting affidavit from Shetzer.
 {¶ 97} Maag's eighth assignment of error is, therefore, overruled.
 ASSIGNMENT OF ERROR NO. IX The trial court erred in failing to order the return of Appellant'svehicle that was seized when he was arrested because any present petitionwould be untimely and any subsequent forfeiture would violateconstitutional double jeopardy rights. R.C. 2933.42, 2933.43; U.S.C.AConst. Amend. 5; Const. Art. 1 Sec. 10.
 {¶ 98} Incident to Maag's arrest on November 18, 2000 in Case No. 2000 CR 202, the Findlay Police Department seized Maag's motor vehicle, a Honda Civic. Pursuant to R.C. 2933.42(B),[24] the disposition of Maag's motor vehicle following seizure by the Findlay Police Department is controlled R.C. 2933.43(C), which provides in pertinent part that:
[u]pon the seizure of contraband * * * the prosecuting attorney who hasresponsibility for the prosecution of the underlying criminal case * * *shall file a petition for the forfeiture, to the seizing law enforcementagency, of the seized contraband [and] shall be filed in the court ofcommon pleas of the county that has jurisdiction over the underlyingcriminal case * * *. Emphasis added.
 {¶ 99} Maag first filed a motion for the return his motor vehicle on June 13, 2001. Maag's motion was subsequently heard by the trial court on December 10, 2001, at which time the court did not decide the issue and the state was permitted to retain the motor vehicle in the event it was to be used as evidence in the pending trial. Thereafter, on February 5, 2003, the matter was again argued before the trial court. The state again asserted that it was retaining Maag's motor vehicle as evidence, but also stated on the record that it had not filed a petition for forfeiture of Maag's vehicle. Again, the trial court did not resolve the issue but, rather, stated that the return or forfeiture of Maag's motor vehicle would be decided after the pending criminal trial.
 {¶ 100} Following the jury trial and convictions in Case Nos. 2000 CR 202 and 2001 CR 48, Maag orally moved the trial court for the return of his vehicle at the August 11, 2003 sentencing hearing. The state objected to the return and orally requested that Maag's vehicle be forfeited to the state in a future proceeding and that the proceeds from the sale thereof be applied toward any outstanding court costs ordered against Maag. The state, however, once again, expressly informed the trial court that it still had not filed a petition or otherwise formally sought forfeiture of Maag's motor vehicle. Despite the state's failure to petition the court for forfeiture of Maag's motor vehicle prior to Maag being sentenced, the trial court ordered that Maag's vehicle "remain impounded pending further forfeiture proceedings * * *."[25]
(Journalized on September 5, 2003). In this regard, we find the Supreme Court of Ohio's decision in Casalicchio (1991), 58 Ohio St.3d 178, to be applicable and controlling of the issue raised herein. In Casalicchio, the Court held that because the state failed to seek forfeiture prior to the defendant being sentenced, the forfeiture of the defendant's motor vehicle constituted an additional criminal penalty in violation of the double jeopardy clauses of both the Ohio and federal Constitutions.Casalicchio, 58 Ohio St.3d 178, at 183, citing Section 10, Article I, Ohio Constitution and the Fifth Amendment to the United States Constitution, citations omitted.
 {¶ 101} Key to the Court's holding in Casalicchio is the fact the state did not move for forfeiture until after the defendant was sentenced for the underlying offenses. That is the situation in the case presently before us. Accordingly, unless Maag's motor vehicle is subject to forfeiture proceedings in another jurisdiction or subject to other civil proceedings, it should be released from the custody of the Findlay Police Department.[26]
 {¶ 102} Maag's ninth assignment of error is, therefore, sustained, and the matter is remanded for further proceedings consistent with our holding herein.
 ASSIGNMENT OF ERROR NO. X Trial counsel was ineffective for failing to request a jury instructionas to the sale of counterfeit controlled substance and for failing toacquire the criminal records of several co-defendants who were involvedin the sale of the counterfeit substances.
 {¶ 103} To establish a claim of ineffective assistance of counsel, appellant must show two components: (1) counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defense. State v. Kole, 92 Ohio St.3d 303, 306,2001-Ohio-191. To warrant reversal, the appellant must show that there is a reasonable probability that, but for counsel's performance, the result of the proceeding would have been different. Strickland v. Washington
(1984), 466 U.S. 668.
 {¶ 104} In this assignment of error, Maag first alleges that his trial counsel was ineffective in failing to request that the jury be instructed as to counterfeit controlled substances. See R.C. 2925.01(O). Maag's assignment of error is without merit.
 {¶ 105} The trial court has the responsibility to give all jury instructions that are relevant and necessary for the jury to weigh the evidence and make findings of fact. See State v. Comen (1990),50 Ohio St.3d 206, paragraph two of the syllabus, State v. Lessin
(1993), 67 Ohio St.3d 487. Because Maag was not charged with a violation for possession or trafficking in "counterfeit controlled substances," it is not clear why, or for what purpose, such an instruction would have aided Maag's defense. Accordingly, we do not find that Maag's trial counsel was deficient for failing to request a jury instruction pertaining to counterfeit controlled substances.
 {¶ 106} Maag also asserts that his trial counsel was ineffective for failing to obtain the criminal records of Michael Harpe, James Hernandez, and Tony Hernandez. The record before us clearly indicates that the state did, in fact, supply this requested discovery to Maag. Specifically, the record makes clear that in response to Maag's requests for discovery, the state provided Maag with James' and Tony Hernandez's criminal records on December 6, 2000, and Michael Harpe's criminal record on March 25, 2002. In light of these facts, the grounds upon which Maag herein relies cannot serve as a valid basis for a claim of ineffective assistance of counsel.
 {¶ 107} Accordingly, Maag's tenth assignment of error is without merit and is overruled.
 ASSIGNMENT OF ERROR NO. XI The cumulative effect of multiple errors occurring at trial deprivedappellant of his constitutional rights to a fair trial, even though eachindividual error may not have constituted cause for reversal.
 {¶ 108} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Baucom, 3d Dist. No. 17-03-14, 2003-Ohio-6986, at ¶ 6, quoting State v. Leach, 150 Ohio App.3d 567,2002-Ohio-6654, at ¶ 57. In order for Maag to show that the cumulative effect of the errors had the effect of denying him of his right to a fair trial, he must establish that there is a reasonable probability that without these errors, the outcome of the trial would have been different. State v. Wyckhouse (May 21, 1997), 3d Dist. No. 7-96-07, citing State. v. Moreland (1990), 50 Ohio St.3d 58, 69.
 {¶ 109} While portions of the trial court's decision are being remanded as to Maag's second and ninth assignments of error, the errors contained therein only involve post-conviction matters, i.e., jail time credit and the return of Maag's personal property. The remainder of Maag's contentions have been found to be without merit. Accordingly we do not find that there has been cumulative error or that he had not been afforded a fair trial. Accordingly, Maag's eleventh assignment of error is overruled.
 {¶ 110} Having found error prejudicial to appellant herein, in the particulars assigned and argued, we reverse in part the judgment of the trial court solely as to appellant's second and ninth assignments of error, and remand the matter for further proceedings consistent with this opinion. The judgment of the trial court is affirmed in all other respects.
Judgment Affirmed in Part, Reversed in Part and Causes Remanded.
 Bryant, J., and Rogers, J. concur.
[1] We note that the actual indictment in Case No. 2000 CR 202 originally charged Maag with five (5) criminal offenses. However, before commencement of the trial on these charges, the state voluntarily dismissed two of the original five counts. Specifically, the state dismissed one count of "engaging in a pattern of corrupt activity" and one count of "possession of cocaine." See R.C. 2923.32(A)(1) and R.C.925.11(A), respectively.
[2] Although the two cases were ultimately consolidated by the trial court for trial purposes, the charges are continually referenced throughout the record in regards to their original case numbers. Thus, for the sake of consistency, each charge is herein referred to by its original Count and Case Number.
[3] R.C. 2945.73(B) provides that "[u]pon motion made at or prior to the commencement of trial, a person charged with an offense shall be discharged if he is not brought to trial within the time required by sections 2945.71 and 2945.72 of the Revised Code."
[4] See State v. Caudill (Dec. 2, 1998), Hancock App. No. 05-97-35, citing Butcher, supra. For example, R.C. 2945.72(C), (E) and (H) provide in pertinent part, that the time in which a person accused of a felony must be brought to trial may be extended by "* * * [a]ny period of delay necessitated by the accused's lack of counsel * * *; [t]he period of any continuance granted on the accused's own motion, * * *; [and] [a]ny period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused * * *. "
[5] R.C. 2945.71(E) provides in pertinent part that "each day during which the accused is held in jail in lieu of bail on the pending charge shall be counted as three days."
[6] Although trial counsel for Maag did not raise the issue of the validity of the parole hold order during the February 5, 2003 hearing on Maag's motion to dismiss, and, therefore, possibly waived this argument on appeal, we, nevertheless, choose to address the merits of Maag's assignment of error. See Brown, 64 Ohio St.3d at 481, citations omitted, ("Only on appeal did Brown through his appellate counsel aver that the record does not demonstrate the existence of a valid parole holder on him. Any question regarding the existence of the parole holder should have been raised in the trial court. `[W]e must presume the set of facts that validates, rather than invalidates, the judgment [below].'")
[7] "Evidence of a valid parole holder can be adduced from the transcripts of the trial court hearing." State v. Stadmire, 8th Dist. No. 81188, 2003-Ohio-873, at ¶ 13, citing Brown,64 Ohio St.3d at 480-481.
[8] We further note that while "[t]he sentencing court generally makes the factual determination regarding the number of days the prisoner was confined for any reason arising out of the subject offense[,] the Department of Rehabilitation and Correction is the body statutorily mandated to credit the time served and reduce the prisoner's sentence."State v. Fair (2000), 136 Ohio App.3d 184, 188, 2000-Ohio-1614.
[9] The facts pertinent to Counts Five and Two, presented infra, have been summarized from the pertinent portions of the bill of particulars as presented by the state for Case Nos. 2000 CR 202 and 2001 CR 48, respectively.
[10] We note this statement was read into the record by the prosecution on re-direct examination of Valentine by the state. Specifically, said evidence was read from the transcript of a previous trial in which Maag testified against Donald Siferd, who was convicted of, among other things, engaging in a pattern of corrupt activity for his involvement in the Gonzalez Family Drug Ring. See State v. Siferd, 151 Ohio App.3d 103,2002-Ohio-6801.
[11] R.C. 2925.11(A) provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance."
[12] Shetzer specifically provided the following testimony regarding the extent of his personal knowledge and experiences with cocaine: that he had ingested cocaine hundreds of times over the years and described the physical effects he would experience from having done so; and that between 1999 and 2000, he snorted and/or smoked approximately two to three grams of cocaine per day.
[13] For example, see State v. Castile, 6th Dist. No. E-02-012,2005-Ohio-41, at ¶ 45, citing Jenks, 61 Ohio St.3d 259, at paragraph one of the syllabus, ("Circumstantial and direct evidence have the same probative value. Therefore, it is irrelevant whether the essential elements [of a] crime were established by direct or circumstantial evidence.")
[14] Valentine testified that prior to January 1, 2000, he had used cocaine many times; had abused cocaine; and was able to describe the physical effects from having ingested cocaine in the past. Shetzer's experience with cocaine has been previously noted and will not be re-stated here. See Footnote 12, supra.
[15] More specifically, both Shetzer and Valentine testified that the trip originally began in two cars (Shetzer and Gonzalez in one and Valentine and Castillo in the other) until they got as far south of Georgia, at which point the car driven by Valentine and Castillo "blew-up." As a result, before they could continue on with their trip to Homestead, Florida, Gonzalez and Shetzer had to backtrack to pick Valentine and Castillo up in Georgia.
[16] Although not challenged by Maag in this assignment of error, we note, for purposes of clarity, that Shetzer testified that Gonzalez had expressly told Shetzer that Maag provided half the money that was going to be used to purchase the kilogram of cocaine, i.e., $12,000.
[17] See also, R.C. 2945.59, which provides that: "[i]n any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
[18] Evid.R. 801(D)(2)(e) provides in pertinent part that "[a] statement is not hearsay if the statement is offered against a party and is a statement made by a co-conspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy."
[19] Evid.R. 403(A) is provided supra. Evid.R. 403(B) provides in pertinent part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of * * * needless presentation of cumulative evidence."
[20] The defendant in Maag, 2002-Ohio-3953, is William Maag, brother of the appellant herein.
[21] Count One in Case No. 2002 CR 48 charged Maag with a violation of R.C. 2923.03(A)(2) and (3), which provide in pertinent part that, "[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense[,] [or] [c]onspire with another to commit [a] violation of R.C.2923.01[,] [(which is commonly referred to as the crime of "conspiracy.")]."
[22] In addition, we note that the identity of the informant, Michael Harpe, was mistakenly revealed by the state in the Bill of Particulars for Case No. 2000 CR 202, and that while testifying in the case sub judice, Agent Apple repeatedly referred to the "confidential informant" as "Michael Harpe." Although clearly known to Maag, it does not appear that counsel for Maag ever actually considered calling Michael Harpe as a witness.
[23] Crim.R. 33(C) provides, in part, that a motion for a new trialbased upon Crim.R. 33(A)(2) "must be sustained by affidavit showing their truth" Emphasis added. Likewise, Crim.R. 33(A)(6), provides that if a motion for a new trial "* * * is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given."
[24] R.C. 2933.42 provides in part, that:
(A) No person shall possess, conceal, transport, receive, purchase, sell, lease, rent, or otherwise transfer any contraband.
(B) if a * * * motor vehicle * * * is used in a violation of division (A) of this section, the * * * motor vehicle is contraband and, if the underlying offense * * * is a felony, is subject to seizure and forfeiture pursuant to R.C. 2933.43.
[25] The state, in its brief to this court, asserts that the trial court, on February 4, 2004, by way of judgment entry, ordered that the disposition of Maag's motor vehicle be decided at a hearing scheduled for March 24, 2004. We note, however, that the referenced February 4, 2004 judgment entry is not in the record before us, which includes only the proceedings of the trial court held on or before November 19, 2003. Regardless of whether the trial court has since resolved or scheduled a hearing to resolve this issue, our holding herein, infra, relieves the trial court of the necessity of determining the disposition Maag's motor vehicle.
[26] See R.C. 2933.41(A)(1), which provides in part: "[a]ny property * * * that has been * * * lawfully seized * * * that is in the custody of a law enforcement agency shall be kept safely pending the time it no longer is needed as evidence and shall be disposed of pursuant to this section. * * *."